UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RUTH M.,[1]

                              Plaintiff,

v.                                                              **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,                    6:21-cv-06139 (JJM)

                              Defendant.

_____

         This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [14, 15].[2] The parties have consented to my jurisdiction [17]. Having reviewed their submissions [14, 15, 16], plaintiff's motion is granted.

## BACKGROUND

         The parties' familiarity with the 1,387-page administrative record [11] is presumed. Further, the parties have comprehensively set forth in their papers plaintiff's treatment history and the relevant medical evidence. Accordingly, I refer only to those facts necessary to explain my decision.

_____

[1]         In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]         Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

After plaintiff's claim was initially denied ([11] at 12, 127), an administrative

hearing was held on May 7, 2020 before Administrative Law Judge ("ALJ") John Ramos. *See*

id. at 51-73 (transcript of hearing).  The plaintiff, who was represented by counsel, and a

vocational expert testified.  Id.  A second hearing was held on August 4, 2020, also before ALJ

Ramos, on August 4, 2020, for cross examination of consultative medical expert Michael A.

Lace, Psy.D. Id. at 34-50 (transcript of hearing).  On August 28, 2020, ALJ Ramos issued a

decision finding that plaintiff was not disabled.  Id. at 12-26 (Decision). Following an

unsuccessful request for review with the Appeals Council (id. at 1-4), plaintiff initiated this

action.

**A. ALJ Ramos's RFC Determination**

ALJ Ramos found that plaintiff's severe impairments were "post-traumatic stress

disorder (PTSD), a depressive disorder, an anxiety/panic disorder, a learning disorder, and

chronic obstructive pulmonary disease (COPD)".[3] Id. at 15.  He also determined that plaintiff

had the residual functional capacity ("RFC") to perform light work, with the following

nonexertional limitations:

> "[S]he retains the ability to understand and follow simple
> instructions and directions, perform simple tasks with supervision
> and independently, maintain attention/concentration for simple
> tasks, and regularly attend to a routine and maintain a schedule.
> She can complete simple tasks without the need for frequent
> supervision and can interact with supervisors on an occasional
> basis throughout the workday, after learning her job duties from a
> brief demonstration or instruction.  She can work in proximity to
> coworkers, but is limited to occasional simple interaction with
> them.  She should have no contact with the public.  The claimant
> can make decisions directly related to the performance of simple

---

[3]      ALJ Ramos also considered, but rejected for purposes of this step of the sequential evaluation,
evidence of right arm and foot injuries stemming from a dog bite, thyroid nodules, and vertigo/syncope.
[11] at 15.  Plaintiff does not challenge ALJ Ramos's findings concerning her severe impairments.

work and handle usual work place changes and interactions
associated with simple work.  She should work in a position where
she is not responsible for the work of or required to supervise
others.  Her work should be goal-oriented work rather than work
involving a production rate pace.  She should work in a position
with little change in daily work processes or routine."

Id. at 17.[4]

To support his RFC findings concerning plaintiff's non-exertional limitations,

ALJ Ramos considered opinions concerning plaintiff's functional limitations from several

sources: 1) consultative examiner Amanda Slowik, Psy.D.; 2) consultative examiner Thomas

Woodhouse, Psy.D.; 3) state agency psychological consultant M.[5] Momot-Baker, Ph.D.; 4) Jenna

Wilkens, PA; 5) Kevin Field, Ph.D.; 6) Amy Jones, LSCW; 7) Rachel Jividen, LMSW; and 8)

consultative medical expert Dr. Lace.  Id. at 22-24.

Plaintiff's primary argument is that ALJ Ramos failed to explain why he rejected

the opinions of all of the psychiatric consultants and treating providers, who opined that plaintiff

had limitations in her ability to stay on-task and maintain satisfactory attendance.  Plaintiff's

Memorandum of Law [14-1] at 18-19.  She argues that this failure is prejudicial because the

vocational expert testified that no work would be available for the plaintiff if she were to be off-

task 10% of the day, or to miss 8 hours of work per month.  Id. at 14, 21.  I agree with plaintiff

that ALJ Ramos failed to adequately explain his treatment of the opinion evidence, and therefore

that the RFC is not supported by substantial evidence. Because the ALJ's analysis of off-task

time and absenteeism could be determinative of this claim, I focus below on these aspects of the

experts' opinions.

---

[4]      Although ALJ Ramos included limitations related to plaintiff's physical impairments, she does
not challenge the ALJ's analysis related to those limitations.

[5]      Dr. Momot-Baker's first name does not appear in the record.

Following her examination of plaintiff on March 5, 2018, Dr. Slowik opined that plaintiff's attention and concentration were "[m]oderately to markedly impaired due to limited intellectual functioning and anxiety". Id. at 803. She found plaintiff's insight was "[l]imited" and her judgment "[q]uestionable". Id. In her medical source statement, she opined, *inter alia*, that plaintiff was "moderately to markedly limited" in her ability to "sustain and ordinary routine". Id. at 804. ALJ Ramos found Dr. Slowik's opinion "generally  persuasive" because it was "based upon a direct examination of the claimant, supported by the findings upon examination set forth in her report, and consistent with the overall record". Id. at 22. In addition, other "factors adding to the persuasiveness of Dr. Slowik's opinion [were] her familiarity with the agency's disability program's policies and evidentiary requirements and the fact that the purpose of the examination was to render a medical opinion on disability". Id.

Dr. Woodhouse examined plaintiff on March 14, 2019. Id. at 1181. He estimated plaintiff's "level of insight" and her "level of judgment" as "poor to fair". Id. at 1185. He opined that plaintiff had a "moderate limitation" in her "ability to sustain concentration and perform tasks at a consistent pace" and a "mild limitations" in her "ability to sustain an ordinary routine and regular attendance at work". Id. ALJ Ramos found Dr. Woodhouse's opinion "generally persuasive" because it was "based upon a direct examination of the claimant, supported by the findings upon examination set forth in his report, and consistent with the overall record". Id. at 22. In addition, other "factors adding to the persuasiveness of Dr. Woodhouse's opinion [were] his familiarity with the agency's disability program's policies and evidentiary requirements and the fact that the purpose of the examination was to render a medical opinion on disability". Id.

ALJ Ramos found the May 24, 2019 opinion of state agency psychiatric consultant Momot-Baker "persuasive" because "it was based upon a review of all relevant medical evidence and opinions in the claim at the time of her review, supported by the findings set forth in her report, and consistent with the limitations noted by the psychological consultative examiner". Id. at 23. "Additional factors adding to the persuasiveness of her opinion was Dr. Momot-Baker's familiarity with the agency's disability program's policies and evidentiary requirements and the fact that the purpose of the review was to render a medical opinion on disability". Id. Although not specifically cited by ALJ Ramos, Dr. Momot-Baker's opinions included a finding that plaintiff was "[m]oderately limited" in her abilities to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods". Id. at 102-103.

PA Wilkins, plaintiff's primary care provider, completed questionnaires concerning plaintiff's functional abilities and mental health conditions on May 2, 2019 and March 19, 2020. Id. at 1196-97, 1273-74. In the May 2, 2019 questionnaire, PA Wilkins noted diagnoses of anxiety and PTSD, with symptoms that were "well managed" with "minor breakthrough anxiety". Id. at 1196. She stated plaintiff had "[n]o limitation" in her ability to, *inter alia*, "sustain [an] ordinary routine without supervision, [and] maintain customary attendance and punctuality". Id. at 1197. In the March 19, 2020 questionnaire, PA Wilkins noted the additional diagnoses of "depression" and "[b]ipolar" and indicated that plaintiff had a "[m]arked" limitation in her ability "[m]aintain regular attendance without interruptions from psychological bases symptoms" and to "[p]erform activities within a schedule[,] be punctual,

[and] perform at a consistent pace". <u>Id.</u> at 1273.  She also stated that plaintiff's symptoms would lead plaintiff to be off task during a normal work day "[g]reater than 20% but less than 33%" of the time, and would likely cause her to be absent from work "3 or more days per month". <u>Id.</u> at 1274.  ALJ Ramos found PA Wilkins' March 19, 2020 opinion "not persuasive" because "it was not supported by an explanation or her treatment notes, which document few positive clinical findings, and was inconsistent with the overall record and other opinions of record, such as the agency experts' opinions". <u>Id.</u> at 23.  He also noted that "the medical expert noted that the opinion . . . was not supported by the record". <u>Id.</u>, *citing* p. 1381.

ALJ Ramos also found the opinion of plaintiff's treating psychiatrist, Dr. Field, was "not persuasive". <u>Id.</u> at 23.  Dr. Field completed questionnaires concerning plaintiff's functional abilities and mental health conditions on June 12, 2019 and January 21, 2020.  In his June 12, 2019 opinion, Dr. Field stated plaintiff was "limited" in her ability to, *inter alia*, "sustain [an] ordinary routine without supervision, [and] maintain customary attendance and punctuality" because plaintiff's "depression and anxiety impair function at times". <u>Id.</u> at 1207. In his January 21, 2020 opinion, Dr. Field opined plaintiff had an "extreme" limitation in her ability to "[m]aintain regular attendance without interruptions from psychological bases symptoms" and a "marked" limitation in her ability to "[p]erform activities within a schedule[,] be punctual, [and] perform at a consistent pace". <u>Id.</u> at 1267.  He also found that plaintiff would be off task "more that 33% of the day" and absent from work "3 or more days per month" due to her impairments. <u>Id.</u> at 1268.  ALJ Ramos found these opinions were "not persuasive" because they "were not consistent with other sources, such as the agency experts, and were not consistent with the overall record, which fails to support the marked and extreme limitations reported". <u>Id.</u> at 23.

Plaintiff's treating licensed clinical social worker, Amy Jones, stated in her November 4, 2019 assessment that plaintiff was "very limited" in her ability to "function in a work setting at a consistent pace".  Id. at 1252.  ALJ Ramos found this opinion was "not persuasive, as it was not supported by an explanation or her treatment notes and was inconsistent with the overall record and other opinions of record".  Id. at 23.

Plaintiff's treating licensed master social worker, Rachel Jividen, opined on her January 14, 2020 mental health questionnaire that plaintiff had "more than [a] slight" limitation, but was "still able to function satisfactorily" in her ability to "[m]aintain regular attendance without interruptions from psychological bases symptoms" and "[p]erform activities within a schedule[,] be punctual, [and] perform at a consistent pace" due to her mental impairments, including PTSD, major depression disorder, borderline personality disorder, and cannabis use disorder.  Id. at 1224.  She opined plaintiff would be off task [m]ore than 15% but less than 20%" of a normal work day, and would cause plaintiff to be absent from work two days per month.  Id. at 1225.  ALJ Ramos found this opinion "not persuasive, as it was not supported by an explanation or the claimant's clinical findings, and was not consistent with the overall record or other opinions of record, such as the agency experts' opinions".  Id. at 24.

Finally, ALJ Ramos assessed the opinions of non-examining psychological expert Dr. Lace concerning plaintiff's limitations from January 1, 2010 through September 30, 2015 (the date she was last insured for DIB), and from October 4, 2018 (the date plaintiff filed her claims) through the date of the assessment (June 22, 2020).  Id. at 12, 15, 24.  Dr. Lace stated in his reports, *inter alia*, that plaintiff had "moderate" limitations in her ability to concentrate, persist, or maintain pace.  Id. at 1359, 1368, 1375, 1379.  For the period after October 4, 2018, he found support in the record for diagnoses of "PTSD, major depression, bipolar I [disorder],

generalized anxiety [disorder], borderline personality [disorder], unspecified anxiety [disorder], and a cannabis use [disorder]."  ALJ Ramos found Dr. Lace's opinion "persuasive, as it was based upon a review of all relevant medical evidence and opinions in the claim, supported by the findings set forth in his report, and consistent with the totality of the record".

Dr. Lace also testified that a person hospitalized with a bipolar manic episode, such as the episode plaintiff experienced in October of 2019, would be unable to work during the manic episode, even if able to work when not in a manic episode.  Id. at 41-42.  Dr. Lace agreed that an individual would have "less" "capacity to work . . . when they're having a flashback" due to PTSD or a panic attack due to panic disorder.  Id. at 43.  He testified that the amount of limitation "would depend on the nature and severity" of the flashback or panic attack.  Id.  He agreed it was "certainly possible" that plaintiff would "occasionally miss time from work especially when the conditions were at its worst".  Id. at 46.  He declined to quantify how much time plaintiff's conditions would interfere with her ability to stay on task.  Id.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff bears the burden with respect to steps one through four, while the

Commissioner has the burden at step five.  *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir.

2012).

**B.      ALJ Ramos' RFC Is Not Supported by Substantial Evidence**

An ALJ's review of medical evidence in a claimant's file, for claims filed on or

after March 27, 2017[6], is governed by 20 C.F.R. § 404.1520c, entitled "[h]ow we consider and

articulate medical opinions and prior administrative medical findings for claims filed on or after

March 27, 2017".  Under this new regulation, "the Commissioner must consider all medical

opinions and 'evaluate their persuasiveness' based on the following five factors:  supportability;

consistency; relationship with the claimant; specialization; and 'other factors'".  Andrew v.

Commissioner, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (*quoting* 20 C.F.R. § 404.1520c(a)-(c)).

An ALJ is "duty-bound to review all of the evidence before her, resolving

inconsistencies, and make a disability determination that is consistent with the evidence as a

whole".  Rice v. Commissioner, 2020 WL 4283894, *4 (W.D.N.Y. 2020).  Where an ALJ's

decision "gives no clue" how the RFC "accommodates or takes into account . . . moderate mental

limitations", the ALJ's findings at steps 4 and 5 of the sequential analysis are "unsupported by

substantial evidence".  Reynolds v. Colvin, 2014 WL 4184729, *5 (N.D.N.Y. 2014).  The ALJ is

required "to construct an accurate and logical bridge between his recitation of the facts and the

conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL

4504987, *2 (W.D.N.Y. 2020).

---

[6]      Plaintiff filed her claims on October 4, 2018.  Administrative Record [11] at 12.

Plaintiff argues that ALJ Ramos failed to do that, most egregiously concerning time that plaintiff might be off-task or absent from work due to her mental health conditions, especially given the testimony of Dr. Lace, whose opinion ALJ Ramos found "persuasive". Plaintiff's Memorandum of Law [14-1] at 19-20.  She argues further that ALJ Ramos' reasoning is deficient because he offers only conclusory statements concerning the supportability and consistency of the opinion evidence, but does not explain his opinions with specific citations to the other opinions or to the record.  Id. at 18-19.

The ability of a claimant to stay on task during the workday and maintain regular attendance is part of the functional ability to concentrate, persist, and maintain pace:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1.  Significantly, **every** opinion considered by ALJ Ramos included a specific limitation to staying on task and maintaining attendance, or a moderate or greater limitation in the broader functional category of concentration, persistence, and pace:

- Slowik: ability to "sustain an ordinary routine" "moderately to markedly limited";

- Woodhouse: "moderate limitation" in "ability to sustain concentration and perform a task at a consistent pace; mild limitation in her ability to sustain an ordinary routine and regular attendance at work";

- Momot-Baker: "moderately limited" in "ability to perform activities within a schedule, maintain regular attendance, and

be punctual within customary tolerances" and in "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- Wilkens: "marked" limitation in ability to "maintain regular attendance" and to "be punctual, perform at a consistent pace", off task "greater than 20% but less than 33%" of the workday and absent "3 or more days per month";

- Field: "extreme" limitation in ability to "maintain regular attendance" and "marked" limitation in ability to "be punctual, perform at a consistent pace", off task "more than 33% of the day" and absent "3 or more days per month" ;

- Jones: "very limited" in ability to "function in a work setting at a consistent pace";

- Jividen: "more than slight" limitation in ability to "maintain regular attendance" and "be punctual, perform at a consistent pace", off task "more than 15% but less than 20%" of the workday and absent 2 days per month; and

- Lace:  "moderate limitations" in "concentration, persistence, and pace".

Id. at 22-24.  To the extent that **all** of the opinions, including those that ALJ Ramos found

persuasive, contained at least some limitation in this area, the opinions were all consistent with

one another, even if they differed concerning the degree of the functional limitation.  Further, Dr.

Lace offered additional testimony that appeared to endorse the idea that plaintiff would be absent

from work, or have some amount of time off-task, when plaintiff had a severe manic episode,

PTSD flashback, or panic attack.  Id. at 41-42, 46.  ALJ Ramos did not specifically discuss in his

opinion how, or whether, his RFC accounted for these limitations.

      The evidence in this record contains evidence that plaintiff could be absent from

work from time to time due to symptoms related to her severe conditions.  The record includes

evidence of two hospitalizations related to plaintiff's mental health conditions - the first in March

of 2017, and the second in October of 2019.  Id. at 476-95, 1229-48.  Given the vocational

expert's testimony that there would be no work that plaintiff could perform if her off-task time

exceeded 10% of the workday, or if absenteeism exceeded 8 hours per month, this issue could be

determinative of plaintiff's claim.  Id. at 14, 21.

ALJ Ramos specifically incorporated into his RFC findings that plaintiff "retains

the ability to . . . regularly attend to a routine and maintain a schedule".  Administrative Record

[11] at 17.  To the extent that this finding is a rejection of limitations found in the otherwise

persuasive opinions of Drs. Lace, Momot-Baker, Woodhouse, and Slowik, he failed to explain

why he rejected those limitations, but adopted others found in their opinions.  "[W]hen an ALJ

adopts only portions of a medical opinion, he must explain why he rejected the remaining

portions." Felicia A. v. Commissioner of Social Security, 2021 WL 2153878, *2 (W.D.N.Y.

2021).

ALJ Ramos "gives no clue" how the RFC "accommodates or takes into account"

the moderate to marked limitations found by Drs. Lace, Momot-Baker, Woodhouse, and Slowik.

Reynolds, 2014 WL 4184729 at *5.  Accordingly, his findings at steps 4 and 5 of the sequential

analysis are "unsupported by substantial evidence".  Id.

Given this important consistency among **all** of the opinions, even if they vary by

degree, ALJ Ramos's conclusion that the opinions of plaintiff's treating providers are

"inconsistent with . . . other opinions of record, such as the agency experts' opinions" ([11] at

23) is suspect.  Further, other evidence in the record challenges ALJ Ramos's conclusions

concerning the consistency of these opinions with other evidence in the record.  For example,

although ALJ Ramos acknowledges plaintiff's October 2019 hospitalization in his opinion ([11]

at 21), he does not acknowledge that the opinions of plaintiff's treating providers that he found

inconsistent with other evidence in the record were authored in the months following her hospitalization.  *See* id. at 23 (discussion of Wilkens' March 2020 opinion, Field's January 202 opinion, and Jones' November 2019 opinion).  Without acknowledging the temporal proximity between these opinions and plaintiff's October 2019 hospitalization, ALJ Ramos found these opinions "inconsistent with the overall record".  Id.  Given this evidence, and without specific discussion of the inconsistencies, or citations to the record to demonstrate how and why the opinions are inconsistent, ALJ Ramos failed  "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T., 2020 WL 4504987 at *2.

Even if evidence of plaintiff's worsening condition is merely temporary evidence of the "cyclical nature of [plaintiff's] depression", ALJ Ramos's dismissal of this evidence with only conclusory statements, but no analysis, is evidence of cherry-picking the record and of basing the RFC on only plaintiff's most functional moments, when the record demonstrates that periodic decompensation is likely.  *See* Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) ("[t]he ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in [plaintiff's] mental health . . . . When viewed alongside the evidence of the apparently cyclical nature of [plaintiff's] depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimizing Dr. Dron's opinion").

In response, the Commissioner provides a number of citations to the record that could be evidence of the "inconsistencies" referenced by ALJ Ramos.  *See* Commissioner's Brief [15-1] at 14-18.  However, I cannot accept the Commissioner's analysis as a substitute for the ALJ's responsibility to provide this analysis in his Decision:

> "[T]he Commissioner's attempt to justify the ALJ's RFC findings
> and the reasons for the less-than controlling weight that the ALJ

- 13 -

> assigned to Dr. Hurley was not a proper substitute for the AL"s analysis, and is exactly the type of *post hoc* rationalization that is not accepted by the Court. . . . While the evidence that the Commissioner offers may have supported the ALJ's conclusions that Dr. Hurley's opinion should receive "some weight," the Court is not permitted to accept the Commissioner's *post hoc* rationalization for the ALJ's determination."

Julie L. v. Commissioner, 2021 WL 2024875, *5 (W.D.N.Y. 2021).

Accordingly, while the RFC *may* have accounted for the moderate to marked limitations in plaintiff's ability to function in the domain of concentration, persistence and pace, as expressed by every opinion considered by ALJ Ramos, he has not explained how.  Remand is therefore necessary for the ALJ to properly address the opinion evidence and the vocational expert testimony discussed above.  Accordingly, I do not reach plaintiff's remaining arguments. *See* Stack, 2020 WL 5494494, *6 ("[b]ecause the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments").

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [14] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Commissioner's motion for judgment on the pleadings [15] is denied.

**SO ORDERED**.

Dated: March 29, 2023

/s/    Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge